<u>**FOR PUBLICATION**</u>

## <u>UNITED STATES DISTRICT COURT</u>
## <u>FOR THE DISTRICT OF NEW JERSEY</u>

_____
: 
HAIM PERRY,                                           :
:
          Plaintiff,                           :
:        Civil Action No. 06-cv-313 (PGS)
          v.                                  :
:
ALBERTO R. GONZALES, Attorney                         :
General of the United States; MICHAEL                 :
CHERTOFF, Secretary for Department                    :        **OPINION**
of Homeland Security, EMILIO T.                        :
GONZALEZ, Director, United States                     :
Citizenship and Immigration Services                  :
("USCIS"); ANDREA QUARANTILLO,                         :
District Director, USCIS Newark, New                  :
Jersey; ROBERT S. MUELLER, III,                       :
Director, Federal Bureau of Investigations            :
("FBI"); PORTER J. GOSS, Director of                  :
Central Intelligence Agency ("CIA"),                   :
:
         Defendant.                       :
_____ :

<u>**SHERIDAN, U.S.D.J.**</u>

      This matter presents an issue yet to be decided by the Third Circuit.  Plaintiff, Haim Perry,

who filed a Complaint in the District Court following the United States Citizenship and Immigration

Services' ("CIS") failure to timely process his application for naturalization, was granted

naturalization by CIS while the matter was pending before this Court.  The Complaint was filed on

January 23, 2006.  The issue before the Court is whether CIS had jurisdiction to make a

determination on the application once the plaintiff filed his Complaint in the District Court pursuant

to 8 U.S.C. §1447(b).  Although no motion is pending before the Court, in light of federal courts'

continuing obligation to *sua sponte* raise the issue of subject-matter jurisdiction, this Court will address the issue. *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 420 (3d Cir. 2003).

## I.

Plaintiff filed an N-400 Application for Naturalization with CIS at the Vermont Service Center Office on May 17, 2002.  On at least two occasions, plaintiff submitted to fingerprinting for criminal and security clearances.  On December 15, 2002, and again on January 26, 2006, CIS requested that the Federal Bureau of Investigation (FBI) review its records and report any relevant information about the plaintiff.  On March 27, 2003, plaintiff was interviewed by a designated District Adjudication Officer in Newark, New Jersey.  Plaintiff has maintained that this interview rises to the level of an "examination" in accordance with the Immigration and Nationality Act (INA), Section 335 (8 U.S.C. §1446), which triggers the 120-day statutory period for CIS to issue a determination on the naturalization application.  On May 1, 2003, plaintiff was given notice that he had passed the U.S. history and government exam. Although the FBI had provided two preliminary reports regarding plaintiff's background check, security clearance was still pending and, thus, no decision could be rendered.

On January 26, 2006, nearly 35 months since plaintiff's interview and without a final decision from CIS, plaintiff filed the instant Petition for Hearing on Naturalization and Complaint for Mandamus, requesting that the Court grant naturalization or, in the alternative, direct CIS to render an immediate decision on the application.  On May 9, 2006, the U.S. Attorney's Office filed a motion to dismiss or remand, arguing that the March 27, 2003 interview did not constitute an "examination" under 8 U.S.C. §1446 and, therefore, the 120-day period did not begin to run.  The motion was opposed by plaintiff.

While the motion was pending before the Magistrate Judge, on September 18, 2006, CIS issued a decision, granting plaintiff naturalization.  Without knowledge of CIS's adjudication of the application, on September 25, 2006, the Magistrate issued a Report and Recommendation, recommending the matter be remanded to CIS with instructions to render an immediate decision upon receipt of the FBI's background check.  On that same date, the U.S. Attorney, pursuant to *Arizonans for English v. Arizona*, 520 U.S. 43, 68 n. 23 (1997), advised this Court "that the case is potentially moot, because this Court and United States Citizenship and Immigration Services may have concurrent jurisdiction."

Neither a stipulation of dismissal, motion to dismiss, or magistrate appeal was filed by the parties.  Rather, counsel agreed between themselves that the time for which the parties could object to the Report and Recommendation was effectively tolled until the Court advises counsel how it wishes to proceed.

## II.

Federal courts are courts of limited, not general jurisdiction. See *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 383, 4 S.Ct. 510, 28 L.Ed. 462 (1884).  These courts are empowered by Article III of the Constitution and the statutes enacted by Congress pursuant thereto.  "Every grant of federal jurisdiction must fall within one of the nine categories of cases and controversies enumerated in Article III."  *In re TMI Litigation Cases Consol. II*, 940 F.2d 832, 861-62 (3d Cir.1991) (Scirica, J., concurring) (citing *Hodgson v. Bowerbank*, 5 Cranch (9 U.S.) 303, 3 L.Ed. 108 (1809)).  Therefore, "before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." *Whitmore v. Arkansas*, 495 U.S. 149, 154, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990).  The doctrine of standing

3

"identif[ies] those disputes which are appropriately resolved through the judicial process." *Id.* at 155. The existence of a case or controversy is a necessary element of every cause of action under Article III. *DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). Under Article III, a district court "lacks subject matter jurisdiction over a dispute that is moot." *Vestcom Int'l, Inc. v. Chopra*, 114 F.Supp.2d 292, 296 (D.N.J. 2000). Mootness is a jurisdictional issue that "a federal district court must resolve before it assumes jurisdiction." *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971). Therefore, the main question in determining mootness "is whether a change in circumstances since the beginning of the litigation precludes any occasion for meaningful relief." *Old Bridge Owners Coop. Corp. v. Township of Old Bridge*, 246 F.3d 310, 314 (3d Cir. 2001). Moreover, lack of subject matter jurisdiction may be raised by the Court *sua sponte* at any time. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986); *Louisville & Nashville Railroad Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Van Holt v. Liberty Mutual Fire Ins. Co.*, 163 F.3d 161, 166 (3d Cir. 1998). In this case, if the Court finds that CIS had no authority to act once the matter was filed in district court, then the CIS decision approving the application would be void and the matter, as it stands before the Court, would not be moot.

III.

The few circuit and district courts that have addressed the issue of whether 8 U.S.C. §1447(b) confers exclusive or concurrent jurisdiction on the district court once a plaintiff files a complaint are seemingly split. A case out of the Ninth Circuit, *United States v. Hovsepian*, 359 F.3d 1144 (9th Cir.

4

2004) (*Hovsepian II*), held that district courts are granted exclusive jurisdiction in such cases.[1]  The only other circuit court to decide the issue was the Fourth Circuit, in an unpublished opinion, which held to the contrary.  *Kia v. U.S. Immigration & Naturalization Service*, 175 F.3d 1014 (4th Cir. 1999).  *Etape v. Chertoff*, 446 F.Supp.2d 408 (D.Md. 2006), a recent opinion out of the District of Maryland, analyzed *Hovsepian II*, criticizing its reasoning and pointing out its flaws.[2]  In this district, there is at least one case where the Court accepted the Fourth Circuit's construction.  However, that Court did not analyze the jurisdictional issue.

In *Becker v. Chertoff*, 2006 WL 2128132 (D.N.J.)(Brown), the Court was confronted with an identical fact pattern as presented here.  Following the expiration of the 120-day period, the applicant filed a complaint in the District Court on April 6, 2006.  On June 9, 2006, CIS granted Becker's petition and naturalized Becker as a United States citizen.  A motion to dismiss was filed and, without discussion on the issue of jurisdiction, the Court found the matter moot.  Thus, although the Court chose not to expressly endorse concurrent jurisdiction, by dismissing the matter as moot and validating CIS's decision, the opinion implicitly supports the notion that CIS retains concurrent jurisdiction.

In order to determine whether the district court's jurisdiction is exclusive, one must analyze the statute and the congressional policy objectives.   The applicable statute provides:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district

---

[1]  One hornbook has stated that this is "the majority view,"*U.S. Citizenship and Naturalization Handbook §10:14*, but that is an overstatement.

[2]  A Notice of Appeal was filed before the Fourth Circuit on August 17, 2006 and is currently pending before that court.

in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. §1447(b).

Clearly, following the expiration of the 120-day period, jurisdiction is conferred on the district court by Congress. The question, however, is whether CIS is divested of its jurisdiction when such a complaint is filed. The *Hovsepian II* Court found that the statutory language granting the district court the power to "either determine the matter or remand the matter" left no room for a subsequent determination by the agency. *Hovsepian II*, 359 F.3d at 1160. The Ninth Circuit believed that had Congress intended for the agency to retain decision making power, such an option would have been expressly provided. *Id.* That court further found support in the portion of the text allowing for "remand [of] the matter, with appropriate instructions, to the Service to determine the matter." *Id.* at 1160-61; 8 U.S.C. §1447(b). The circuit court likened the remand option to a remand to the district court, which occurs only in situations where the district court has lost jurisdiction and is acquired by the circuit court upon the filing of a proper notice of appeal. *Hovsepian II*, 359 F.3d at 1160. The court was of the opinion that ordering the agency "to determine the matter," when the agency already had the power to determine the matter, would render the phrase surplusage. *Id.*

The clear purpose of the statute is to reduce unnecessary delay in resolution of citizenship disputes. See generally, Rochvarg, *Reforming the Administrative Naturalization Process: Reducing Delays While Increasing Fairness*, 9 Georgetown Immigration Law Journal 397 (1995). The Court's goal should be to effectuate this intent. Congress thus granted district courts jurisdiction as a means of last resort to stimulate action on the naturalization application. After all, CIS is "the agency primarily charged by Congress to implement the public policy underlying the [naturalization] laws."

6

*INS v. Miranda*, 459 U.S. 14, 19, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982).

In challenging *Hovsepian II*'s statutory construction, the court in *Etape* believed that the explicit allowance to remand provides support for the contention "that Congress did not intend to prohibit CIS from making a decision as a consequence of its failure to act within 120 days." *Etape*, 446 F.Supp.2d at 417.  That court found that "[n]othing in the statute strips CIS of its jurisdiction where more than 120 days has elapsed since a naturalization examination, CIS has not rendered a decision, and the applicant has filed claim in the district court pursuant to §1447(b)." *Id.* at 416. "The statutory language makes clear that the jurisdiction of the district court under §1447(b) is premised on a naturalization application that has not yet been adjudicated by CIS." *Id.*

The Ninth Circuit relied on *Brock v. Pierce County*, 476 U.S. 253, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986), as controlling precedent, for the proposition that 8 U.S.C. §1447(b) is an effective "jurisdiction-stripping statute," a contention *Etape* finds misplaced. *Compare, Hovsepian II*, 359 F.3d at 1161 with *Etape*, 446 F.Supp.2d at 416-17.  According to the *Hovsepian II* Court, "*Brock* held that an agency does not lose jurisdiction unless the statute at issue requires that the agency act within a particular time period and the statute specifies a consequence for failure to comply with the time limit." *Hovsepian II*, 359 F.3d at 1161 (citing *Brock*, 476 U.S. at 259, 266, 106 S.Ct. 1834).  Finding 8 U.S.C. §1447(b) to fit squarely within those parameters, the Ninth Circuit held that the agency was divested of jurisdiction upon the filing of a complaint with the district court. *Hovsepian II*, 359 F.3d at 1161. This is an overbroad reading of *Brock*.  In fact, the Supreme Court noted that this language evolved from a line of precedent in the Courts of Appeals, which the Supreme Court "never expressly adopted," but whose underpinning stem from decisions of the Supreme Court. *Brock*, 476 U.S. at 259-60, 106 S.Ct. 1834.  The Supreme Court cautioned

against stripping an agency of its authority in matters over which it is charged to enforce. The Court stated:

> We would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake. When, as here, there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that Congress intended the agency to lose its power to act.

*Brock*, 476 U.S. at 260, 106 S.Ct. 1834. *Etape* adopted the Supreme Court's rationale and found that filing a complaint with the district court, affording concurrent jurisdiction, was a "less drastic" remedy than stripping an agency of its power to act. *Etape*, 446 F.Supp.2d at 417.

The Ninth Circuit highlighted several policy objectives that Congress allegedly sought to further by enacting the Immigration Act of 1990, including: (1) to reduce the waiting time for naturalization applicants; (2) to streamline the process of applying for naturalization and reduce the burdens on the courts and INS; and (3) consistency and fairness of naturalization decisions. *Hovsepian II*, 359 F.3d at 1163-64.

The *Hovsepian II* Court believed that concurrent jurisdiction would frustrate the purpose of §1447(b) because CIS would no longer have incentive to act within the 120-day period. *Id.* at 1163. While this Court acknowledges the concerns of the Ninth Circuit, the goal of Congress is to reduce the waiting time on naturalization applications, and concurrent jurisdiction best addresses this concern. Requiring CIS to cease all work on the application upon the filing of a complaint, only to have the matter possibly remanded back to CIS months later for the agency to pick up where it left off would be counter-productive. Generally, CIS is acting expeditiously and efficiently in the time it is allotted to decide naturalization applications. If such action takes longer, it is likely that a good reason exists; however, the statute affords an applicant the right to petition the district court for

8

relief primarily to prod the process along.  The Judiciary must acknowledge that its procedures do not result in quick resolutions as Congress intended here.  Take this case; it has been about one year since filing of the Complaint.  In May, 2006, the government moved to dismiss rather than answer. Six months later, the magistrate rendered a decision on the application. The point is that if CIS had not acted, the case would still be in the early discovery stage of the litigation process.  Since Congress's view is that "ending delay" is the goal, it appears that concurrent jurisdiction fosters this purpose.

The Ninth Circuit only considered the situation where CIS denies an application after a petition is filed with the district court and determined that, in such cases, judicial time is wasted.  *Id.* Under those circumstances, according to the *Hovsepian II* Court, the court's work would be duplicative and  useless, requiring dismissal while an applicant exhausts his or her administrative remedies and then, if requested by the applicant, undertake a *de novo* review of CIS's decision.  *Id.* at 1163-64.  However, that supposition is not entirely correct.  Upon such a *de novo* review the Court would have the benefit of an administrative record and opinion by CIS who possesses more expertise than the Court on such matters.  This would certainly save much time.  Moreover, not only does the Ninth Circuit ignore the time and resources that may be saved in the denial situation, it also fails to recognize the preservation of judicial resources when CIS grants a naturalization application while the matter is pending in the district court, as occurred in the instant case.  The inescapable conclusion is that much judicial time and resources will be saved if CIS is not stripped of jurisdiction while the matter is pending in the district court.  Congress' goal was to eliminate undue delay in the processing of naturalization applications.  Suspending CIS's involvement, after CIS has already had substantial time dealing with the file and is fully familiar with the facts and issues, does not buttress this

objective.

Concern was also raised by the Ninth Circuit regarding consistency and fairness in naturalization decisions. *Id.* at 1164. The fear is that concurrent jurisdiction would provide no incentive for CIS to act within the proscribed 120-day period and would lead to rushed decisions once the application is before the district court (e.g. "INS will no longer have much incentive to act on a naturalization application with the 120-day period."). *Id.* In fact, Congress often finds that the opposite is true. One court has noted that "historical familiarity and policymaking expertise account in the first instance for the presumption that Congress delegates interpretive lawmaking power to the agency rather than to the reviewing court, we presume here that Congress intended to invest interpretive power in the administrative actor in the best position to develop these attributes." *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 153, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991) (citations omitted). Thus, the Court should encourage CIS to render decisions on naturalization applications. The Court should not thwart the agency from resolving an applicant's filing. Absent clear facts, the Court should not base policy on speculations such as "concurrent jurisdiction might cause a rushed decision making process and might increase the possibility that mistakes will be made." *Hovsepian II*, 359 F.3d at 1164.

IV.

The facts of this case were contemplated in *Etape*, where the court hypothesized that "CIS could grant a naturalization application while a complaint was pending, and an interpretation of §1447(b) that divested CIS of jurisdiction would invalidate that action." *Etape*, 446 F.Supp.2d at 418. In fact, the *Etape* Court observed, in a footnote, that there have been many cases in that district where CIS approved naturalization during the pendency of the district court proceeding which were

dismissed as moot or voluntarily withdrawn.   *Id.* at 418, n. 5.  The same is likely true in districts throughout the country.

Therefore, the best way to effectuate the Congressional intent is to allow concurrent jurisdiction between CIS and the District Court following the filing of a Complaint with the District Court as authorized by §1447(b). The rule as expressed in *Etape* is persuasive and should be followed in this circuit.  Accordingly, CIS has jurisdiction to naturalize the plaintiff.  For the foregoing reasons, the Court finds that plaintiff's Complaint is moot and that this Court has no subject matter jurisdiction.  The Complaint is dismissed.


February 1, 2007                                    S/ *Peter G. Sheridan*
                                                    PETER G. SHERIDAN, U.S.D.J.

11